UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| INTERNATIONAL TRANSACTIONS LIMITED, a Cayman Islands corporation, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. |
| VS. | ) ) | 3:01-CV-1140-G |
| EMBOTELLADORA AGRAL REGIOMONTANA S.A. de C.V., ET AL., | ) ) ) | **ECF** |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This case is on remand from the Court of Appeals.  The issue for decision on

remand is whether this court has subject matter jurisdiction, a question which turns

on whether the plaintiff International Transactions Limited ("ITL") has standing to

sue in this case, for unless ITL has standing, the court lacks jurisdiction.  To

determine whether ITL has standing, the court must decide whether the laws of Texas

or Mexico apply to this case.[1]

--------

[1]      The Court of Appeals gave the following direction to this court on
remand:

(continued...)

# I.  BACKGROUND

A complete statement of the factual and legal background of the case can be found in the October 22, 2002, memorandum order of this court, *International Transactions, Ltd. v. Embotelladora Agral Regiomontana, S.A. de C.V., et al.*, 277 F. Supp. 2d 670, 672-75 (N.D. Tex. 2002) (Fish, Chief J.) ("*ITL I*"); the October 20, 2003, opinion of the Court of Appeals, *International Transactions, Ltd. v. Embotelladora Agral Regiomontana, S.A. de C.V., et al.*, 347 F.3d 589, 591-93 (5th Cir. 2003) ("*ITL II*"); the May 26, 2004, memorandum order of this court, *International Transactions, Ltd. v. Embotelladora Agral Regiomontana, S.A. de C.V. et al.*, No. CIV.A 3:01-CV-1140-G, 2004 WL 1171217, *1-*2 (N.D. Tex. May 26, 2004) ("*ITL III*"); and the May 19, 2005, opinion of the Court of Appeals, *International Transactions Limited v. Embotelladora Agral Regiomontana, SA de CV, et al.*, 2005 WL 1185564, *1-*2 (5th Cir. May 19, 2005) ("*ITL IV*").

---

[1](...continued)

> In sum, we decide this appeal under Texas law.  However, on remand we ultimately leave it to the district court to determine whether Texas law or Mexican law is to be applied in this case . . . .  [W]e vacate the order of dismissal and remand to the district court for disposition consistent with this opinion.

*International Transactions Limited v. Embotelladora Agral Regiomontana, SA de CV, et al.*, 2005 WL 1185564, at *3 (5th Cir. May 19, 2005).

ITL[2] initially brought this suit against five Mexican companies[3] (collectively, the "Agral defendants") seeking an order confirming an arbitration award.[4]  According to the complaint, ITL entrusted ten million dollars to Sharp Capital, Inc. ("Sharp")[5] to invest in the purchase of a promissory note (the "Note") originally issued by one of the Agral companies, Embotelladora Agral Regimontana, S.A. de C.V. ("Embotelladora"), to NationsBank.  *Id*. ¶ 10; *see also* Response to Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction and Memorandum in Support Thereof ("Response") at 3.  The remaining Agral companies guaranteed the Note.  Complaint ¶ 10.  The Note contained the following clause.

> **Applicable Law**.  This Note is delivered in and shall be construed under the internal laws and judicial decisions of the State of Texas and laws of the United States as the same may be applicable.

---

[2]    ITL is a Cayman Islands corporation.  *See* Third Amended Complaint ("Complaint") ¶ 1.

[3]    The five Mexican companies are Agral Arrendadora, S.A. de C.V., Agral Inmobiliaria, S.A. de C.V., Embotelladora Agral Regiomontana, S.A. de C.V., Embotelladora Agral de la Laguna, S.A. de C.V., and Agral Comisionista y Distribuidora, S.A. de C.V.  The Agral defendants are all Mexican corporations.  *See* Complaint ¶¶ 2-6.

[4]    On April 1, 2002, ITL added as a defendant Pepsi-Gemex, S.A. de C.V. ("Pepsi-Gemex"), a Mexican corporation which -- according to ITL -- has acquired the Agral defendants.  Complaint ¶¶ 7, 14.

[5]    Sharp is a Texas corporation with its principal place of business in Texas.  Notice of Removal ¶ 8 n.22.

Promissory Note ("Note") ¶ 7, *located in* Appendix to Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction ("Appendix to Motion") at 7-10; Complaint ¶ 10.  The Note also contained an arbitration clause requiring that any disputes between Sharp (*i.e.*, the holder of the note) and the Agral defendants be resolved through arbitration.  *See* Note ¶ 10; Complaint ¶ 10.

Embotelladora defaulted on the promissory note in 1996.  Complaint ¶ 11.  Shortly thereafter, Sharp -- acting pursuant to the arbitration clause in the Note -- initiated arbitration proceedings against the Agral defendants with Judicial Arbitration and Mediation Services ("JAMS") in Dallas, Texas.  *Id.* On January 31, 1997, JAMS entered an arbitration award of more than eleven million dollars in favor of Sharp (the "Award").[6]  *Id*. ¶ 12; *see also* Notice of Removal ¶ 2; Response at 4.  During the arbitration proceedings, ITL was simply referred to as the "Unknown Investor."  *See* JAMS Memorandum and Order on Motions and Requests, and Responses Thereto, at Pre-Hearing Conference at 3-6 (issued Oct. 4, 1996) ("JAMS Memorandum Order"), *attached to* Supplemental Appendix to Reply Brief in Support of Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction ("Appendix to Reply") as Exhibit 8.

On August 31, 1998, Sharp assigned the Award and the Note to Jose Treviño Cañamar ("Cañamar"), a Mexican attorney working in Monterrey, Mexico, in

---

[6]     The underlying promissory note was merged into the Award.

- 4 -

exchange for an account of Bridgestone, Inc. and payment of Sharp's legal fees. *See*

*generally* Sharp-Cañamar Assignment, *located in* Appendix to Motion at 52-62; *see also*

Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction ("Motion") at

5; Response at 6; Appendix to Reply at 2.  On September 9, 1998, Cañamar assigned

the same arbitral award and note to Grupo Embotellador Noreste, S.A. de C.V.

("GEN")[7] in exchange for 55 million pesos.  *See* Appendix to Motion at 71, 87.

Sharp, Cañamar, and GEN signed on September 9, 1998 a "Master Agreement"

releasing all claims against each other and against the Agral defendants.[8]  See *id.* at

86.

　　　　On February 4, 1999, ITL brought suit against Sharp and Mauricio A.

Gutierrez ("Gutierrez"), Sharp's President, seeking to regain custody of the

arbitration award.  In that case, Judge Barbara M.G. Lynn of this court dismissed, on

January 31, 2001, all of ITL's claims against Sharp and Gutierrez but ordered the

Special Master for the Sharp Estate to convey the arbitration award to ITL.[9]

---

[7]　　　　On January 9, 2004, ITL added GEN, a Mexican corporation the Agral
companies were merged into, as a defendant in this suit.  "The end result of the
[a]ssignments and the merger was that the debtor under the Award and the purported
owner of the Award became one."  *ITL II*, 347 F.3d at 592.

[8]　　　　The assignment between Sharp and Cañamar and between Cañamar and
GEN, as well as the execution of the Master Agreement between Sharp, Cañamar,
and GEN, took place in Mexico.  Appendix to Motion at 52, 71, 86-87.

[9]　　　　The Agral defendants contend that ITL was actually assigned nothing by
the Special Master because Sharp had already assigned its rights in the award to
(continued...)

Memorandum Order and Judgment, filed January 31, 2001, in *International Transactions Limited v. Gutierrez*, No. 3:99-CV-0241-M (N.D. Tex.) (Lynn, J.). ITL thereafter brought the present action to enforce payment of the arbitration award.

On April 12, 2002, two of the Agral defendants -- Agral Arrendadora and Agral Inmobiliaria -- filed a motion to dismiss the case for lack of subject matter jurisdiction. *See generally* Motion. The court originally granted the motion on grounds of international comity. See *ITL I*, 277 F. Supp. 2d at 678-81. The Court of Appeals, however, vacated and remanded that order, concluding that the Agral defendants had not demonstrated that ITL and/or Sharp was afforded notice and an opportunity to be heard in the proceedings leading to the Mexican bankruptcy court's decision. See *ITL II*, 347 F.3d at 591. The Court of Appeals directed this court to consider the Agral defendants' alternate arguments concerning defects in subject matter jurisdiction.[10] *Id*. at 596.

On May 26, 2004, this court dismissed ITL's complaint against the defendants Agral Arrendadora, S.A. de C.V., Agral Inmobiliaria, S.A. de C.V., and Grupo Embotellador Noreste, S.A. de C.V. ("GEN") for lack of subject matter jurisdiction.

---

[9](...continued)
Cañamar, who then assigned them to GEN. Notice of Removal ¶ 6.

[10]    On April 2, 2004, GEN filed a motion to dismiss for lack of subject matter jurisdiction, incorporating by reference the arguments and factual allegations made in the related pleadings filed by the Agral defendants. *See generally* Defendant Grupo Embotelladora Noreste, S.A. de C.V.'s Motion to Dismiss for Lack of Subject Matter Jurisdiction and Lack of Personal Jurisdiction.

See generally *ITL III*.  On May 19, 2005, the Fifth Circuit vacated that ruling.  See

generally *ITL IV*.  Specifically, the Fifth Circuit concluded the following:

> . . . Texas law does not support the district court's
> reasoning and [we] vacate and remand for that reason.
> Because the choice of law issue is complex and the parties
> have inadequately addressed the issue before this court, we
> leave it to the district court to determine the correct choice
> of law, if necessary.

*Id.* at *1.

Accordingly, on June 20, 2005, this court ordered the parties to file

supplemental briefs on the choice of law issue.

## II.  ANALYSIS

### A.  Subject Matter Jurisdiction

Rule 12(b)(1) of the Federal Rules of Civil Procedure authorizes the dismissal

of a case for lack of jurisdiction over the subject matter.  *See* FED. R. CIV. P. 12(b)(1).

On a Rule 12(b)(1) motion, which "concerns the court's 'very power to hear the case .

. . [,] the trial court is free to weigh the evidence and satisfy itself as to the existence

of its power to hear the case.'"  *MDPhysicians & Associates, Inc. v. State Board of*

*Insurance*, 957 F.2d 178, 181 (5th Cir.) (quoting *Williamson v. Tucker*, 645 F.2d 404,

413 (5th Cir.), *cert. denied*, 454 U.S. 897 (1981)), *cert. denied*, 506 U.S. 861 (1992).

A party seeking relief in a federal district court bears the burden of establishing the

subject matter jurisdiction of that court.  *United States v. Hays*, 515 U.S. 737, 743

(1995); *McNutt v. General Motors Acceptance Corporation of Indiana*, 298 U.S. 178, 189

- 7 -

(1936); *Langley v. Jackson State University*, 14 F.3d 1070, 1073 (5th Cir.), *cert. denied*, 513 U.S. 811 (1994).

Normally, the court determines subject matter jurisdiction from the sufficiency of the allegations in the complaint. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). If, however, a defendant makes a factual attack on subject matter jurisdiction -- by providing affidavits, testimony, or other evidentiary materials challenging the jurisdiction of the court -- then the plaintiff has the burden of proving jurisdiction by a preponderance of the evidence. *Id*.; *Middle South Energy, Inc. v. City of New Orleans*, 800 F.2d 488, 490 (5th Cir. 1986). In the instant motion, the Agral defendants have presented the court with a factual attack on ITL's complaint, pursuant to Rule 12(b)(1), because they have submitted affidavits and voluminous evidentiary materials in support of their motion.

## B. Choice of Law

Footnote 16 of this court's May 26, 2004 ruling reads as follows --

> The validity of an assignment is governed by state law. GEN argues that Mexican law applies. Reply at 14. ITL argues that Texas law applies. Supplemental Brief in Response to Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction ("Supplemental Response") at 5 n.16. The court applies Texas law, not as a resolution to this choice of law issue, but to give ITL the benefit of the doubt. See *Christofferson v. Halliburton Company*, 617 F.2d 403, 406 (5th Cir. 1980).

*ITL III*, 2004 WL 1171217, at *4 n.16.

In its May 19, 2005 ruling, the Court of Appeals held the following:

> The parties dispute whether the law of Mexico or Texas
> applies to this case.  ITL urges Texas law, while defendants
> contend that Mexican law applies.  The district court did
> not address the choice of law issue, but instead applied
> Texas law "to give ITL the benefit of the doubt."  . . .
> Texas law does not support the district court's reasoning
> and [we] vacate and remand for that reason.  Because the
> choice of law issue is complex and the parties have
> inadequately addressed the issue before this court, we leave
> it to the district court to determine the correct choice of
> law, if necessary.

*ITL IV*, 2005 WL 1185564, at *1.

### 1.  *Texas Law Applies*

As stated, the parties are in dispute as to which law applies to this case.  In

determining which law to apply, a federal court must use the choice of law provisions

of the forum in which the court sits.  *Kucel v. Walter E. Heller & Co.*, 813 F.2d 67, 73

(5th Cir. 1987) (citing *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496

(1941)). Since the Note has a facially valid choice of law provision, the relevant

inquiry becomes whether Texas bears a "reasonable relation" to the parties or the

transaction.  *See* TEX. BUS. & COM. CODE ANN. §§ 35.51(a)(2)(B), (b) (Vernon

2002);[11] see also *Pennwell Corporation v. Ken Associates, Inc.*, 123 S.W.3d 756, 763 n.7

---

[11]     For contracts over $1,000,000,

> "if the parties to a qualified transaction agree
> in writing that the law of a particular
> jurisdiction governs an issue relating to the

(continued...)

- 9 -

(Tex. App.--Houston [14th Dist.] 2003, writ denied).

Under Texas law, a reasonable relation exists if

> (1) a party to the transaction resides there; (2) a party has
> its place of business there or an office in which it
> conducted a substantial part of the negotiations relating to
> the transaction; (3) all or any part of the subject matter is
> located there; (4) a party is required to perform a
> substantial amount of its obligations there; or (5) a
> substantial part of the negotiations and the execution of
> the contract occurred in that jurisdiction.

*Ensco Offshore Company v. Titan Marine L.L.C.*, 370 F. Supp.2d 594, 596 (S.D. Tex.

2005).

The Note's choice of law provision, coupled with the fact that the Note was

executed between Sharp, a Texas corporation represented by Gutierrez, a Texas

citizen, and NationsBank of Texas, N.A., clearly point to the conclusion that Texas

has a reasonable relation to the transaction.  The court therefore determines that

---

[11](...continued)
> transaction, including the validity or
> enforceability of an agreement relating to the
> transaction or a provision of the agreement,
> and the transaction bears a reasonable
> relation to that jurisdiction, the law, other
> than conflict of laws rules, of that jurisdiction
> governs the issue regardless of whether the
> application of that law is contrary to a
> fundamental or public policy of this state or
> of any other jurisdiction."

TEX. BUS. & COM. CODE ANN. §§ 35.51(a)(2)(B), (b) (Vernon 2002).

Texas law should be utilized in deciding the defendants' motion to dismiss for lack of jurisdiction.[12]

## 2. *Effect of Texas Law on the Assignment*

Legal and equitable title to property may be vested in different entities. *Elbert v. Waples-Platter Co.*, 156 S.W.2d 146, 150 (Tex. Civ. App.--Fort Worth 1941, writ ref'd w.o.m.). Under Texas law, "[a] resulting trust is implied in law when someone other than the person in whose name title is taken pays the purchase price." *Nolana Development Association v. Corsi*, 682 S.W.2d 246, 250 (Tex. 1984). A promissory note may be subject to a resulting trust. *Crume v. Smith*, 620 S.W.2d 212, 215 (Tex.

---

[12]    The defendants contend that validity of the assignments, and thus of ITL's standing, is governed by the laws of Mexico, as Mexico has the most reasonable relation to the assignments. Defendants' Response Brief Regarding Choice of Law in Support of Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction ("Defendants' Response") at 16. Specifically, the defendants argue that the assignments were negotiated and executed in Mexico by Mexican nationals before a Mexican notary. *Id*. The defendants posit that when a transaction is performed before a Mexican notary, Mexican law deems the transaction to have full legal validity. *Id*. at 17. Because the document prepared by the notary recites that Gutierrez presented evidence that he was authorized to make the transfer on behalf of Sharp, the defendants reason, this recital presumptively establishes the validity of the assignment. *Id*.

ITL contends, however, that Sharp traveled to Mexico and assigned the Award to Cañamar without ITL's knowledge or consent. ITL's Brief Regarding the Applicable Governing Law at 1, 4. Sharp endorsed the Note in blank and delivered the Note to Cañamar. *Id*. at 5. Sharp and Cañamar entered into a contract entitled "Agreement for Assignment of Rights," *id*. at 4, and Sharp endorsed the Note "AS CUSTODIAN." *Id*. at 15. ITL urges that this assignment was defective, inasmuch as Sharp merely held custodial rights to the Note and ITL did not authorize assignment of the Award. *Id*. Thus, ITL argues, all that Sharp could assign to Cañamar was bare legal title.

Civ. App.--Tyler 1981, no writ); see, *e.g.*, *Leininger v. Leininger*, 705 F.2d 727, 732-33

(5th Cir. 1983).  The party who paid the purchase money is deemed the equitable

owner of the property, while the legal titleholder is deemed "a mere trustee who holds

for the benefit of those that furnished the consideration."  *Osuna v. Quintana*, 993

S.W.2d 201, 210 (Tex. App.--Corpus Christi 1999, no writ); see also *Morrison v.

Farmer*, 213 S.W.2d 813, 815 (Tex. 1948) ("The parties are presumed to have

intended that the grantee hold title to the use of him who paid the purchase price and

whom equity deems to be the true owner.").  The creation of a resulting trust

establishes a fiduciary relationship.  *Sahagun v. Ibarra*, 90 S.W.3d 860, 864 (Tex.

App.--San Antonio 2002, no writ).  The defendants do not dispute that by entrusting

ten million dollars to Sharp, Sharp acted as ITL's agent when Sharp purchased the

Note with ITL's funds.  *ITL IV*, 2005 WL 1185564, at *2.  ITL then became the

equitable owner of the Note.  *Id*.  Relying on Texas Business and Commercial Code

§ 3.301,[13] Sharp, as legal title holder to the Note, maintained the arbitration for the

benefit of an "Unknown Investor," later revealed to be ITL.  Thus, the Award entered

---

[13]     "Person entitled to enforce" an instrument means (i) the
holder of the instrument, (ii) a nonholder in possession of
the instrument who has the rights of a holder, or (iii) a
person not in possession of the instrument who is entitled
to enforce the instrument pursuant to Section 3.309 or
3.418(d).  A person may be a person entitled to enforce the
instrument even though the person is not the owner of the
instrument or is in wrongful possession of the instrument.

TEX. BUS. & COMM. CODE ANN. § 3.301 (Vernon 2002).

in Sharp's favor also inured to the benefit of ITL as the Note's equitable owner.  In

*ITL IV*, the Fifth Circuit concluded that "[t]he Award was entered in favor of Sharp

because Sharp had maintained the arbitration, not because the arbitrator had

concluded that Sharp was the Award's sole owner, . . . [and that] ITL retained a

beneficial interest in the Award at the time it was issued." *Id*. at *2 n.2 and *3.

In *ITL IV*, the Court of Appeals held that "[b]ecause Sharp possessed only

legal title to the Award under Texas law, the assignment from Sharp to Cañamar did

not pass ITL's equitable interest unless Sharp possessed actual or apparent authority

from ITL to assign the Award." *ITL IV*, 2005 WL 1185564, at *2.  The defendants

maintain that Gutierrez, as the sole shareholder and president of Sharp, had actual

authority to assign the Award, even though that authority  was not conferred at a

formal board of directors meeting.  Defendants' Response at 12.  The defendants also

contend that Gutierrez had apparent authority to assign the Award to Cañamar

because "Sharp's appointment of Gutierrez as its president clothed him with the

apparent authority to do those things ordinarily entrusted to that office." *Id*.

However, neither Sharp nor Gutierrez possessed actual or apparent authority from

ITL to assign the Award to Cañamar.  See *Nolana Development*, 682 S.W.2d at 250

("The trustee of a resulting trust . . . generally is responsible only for conveying the

property to the beneficiary or in accordance with his directions.").

C. <u>The Standing Requirement</u>

Lack of Article III standing is a defect in subject matter jurisdiction.  See *Bender v. Williamsport Area School District*, 475 U.S. 534, 541-42 (1986); *O'Shea v. Littleton*, 414 U.S. 488, 493-95, 504 (1974).  Therefore, when a plaintiff lacks standing to sue in federal court, it is appropriate for this court to dismiss the action, pursuant to Rule 12(b)(1), for want of subject matter jurisdiction.  See *Chair King, Inc. v. Houston Cellular Corporation*, 131 F.3d 507, 509 (5th Cir. 1997); *Bender,* 475 U.S. at 541.

The Supreme Court has held that Article III standing, at its "irreducible constitutional minimum," requires that a plaintiff demonstrate:  (1) "an injury in fact -- an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent;" (2) "a causal connection between the injury and the conduct complained of -- the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court;" and (3) a substantial likelihood that the injury will be "redressed by a favorable decision."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal citations, quotation marks, and footnote omitted); see also *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000); *Public Citizen, Inc. v. Bomer*, 274 F.3d 212, 217-18 (5th Cir. 2002).  All three elements must exist to establish Article III standing.  *Vermont*, 529 U.S. at 771.  The

party invoking federal jurisdiction bears the burden of establishing these elements.

*Lujan*, 504 U.S. at 561.

Nothing in the Federal Arbitration Act ("FAA") prohibits a party to the

arbitration from assigning an award.  The award itself is a transferrable property

interest.[14]  See, *e.g.*, *Kentucky River Mills v. Jackson*, 206 F.2d 111, 117, 120 (6th Cir.)

(upholding the assignment of an arbitration award under New York law), *cert. denied*,

346 U.S. 887 (1953).  Thus, the assignment of an arbitration award carries with it a

---

[14]     An arbitration award fits the definition of a "chose in action," *i.e.*, a "right to bring an action to recover a debt, money, or thing."  BLACK'S LAW DICTIONARY 234 (7th ed. 1999).  This is because an arbitration award carries with it a right to bring an action to confirm that award.  Texas law permits assignments of all property rights, including choses in action.  See *Doty v. Caldwell*, 38 S.W. 1025 (Tex. Civ. App. 1897, no writ).  See also *Citizens State Bank of Houston v. O'Leary*, 167 S.W.2d 719, 721 (Tex. 1942); *PPG Industries, Inc. v. JMB/Houston Centers Partners Limited Partnership*, 41 S.W.3d 270, 276 (Tex. App.--Houston [14th Dist.] 2001); *American Indemnity Company v. Baumgart*, 840 S.W.2d 634, 637-38 (Tex. App.--Corpus Christi 1992, no writ).  An assignment of a chose in action -- including an arbitration award -- operates as valid transfer of the title to the chose, and the assignee becomes the real party in interest, who may maintain the action in his or her own name.  6 AM. JUR. 2D ASSIGNMENTS § 51.
        Moreover, under Texas statutory law, judgments and causes of action may be assigned.  TEX. PROP. CODE ANN. § 12.014 (Vernon 2004).  An arbitration award is akin to a court judgment.  See *Milliken v. Grigson*, 986 F. Supp. 426, 431 (S.D. Tex. 1997) ("In Texas, an arbitration award has the same effect as the judgment of a court of last resort."), *aff'd*, 158 F.3d 583 (5th Cir. 1998) (table). Further, because an arbitration award may be enforced through an confirmation proceeding under the FAA, *see* 9 U.S.C. § 9, it is at least an "interest in a cause of action" for confirmation of that award.  See *Casray Oil Corporation v. Royal Indemnity Company*, 165 S.W.2d 244, 248 (Tex. Civ. App.--Galveston 1942) (observing that the assignment of a judgment carries with it a cause of action on which judgment is based, together with all of assignor's beneficial interest in judgment and all its incidents) (citation omitted), *aff'd*, 169 S.W.2d 955 (Tex. 1943).

cause of action for confirmation, together with all of the assignor's beneficial interest in the award.[15]  Absent status as a party to -- or an assignee of -- an arbitration award, however, a plaintiff necessarily lacks standing to bring a confirmation suit under the FAA.  *See* 9 U.S.C. § 9.

Because Sharp did not validly assigned the Award to Cañamar, ITL received a right or interest in the Award when the Special Master later assigned the Award to ITL.  The court therefore concludes that there is a case or controversy before it to be adjudicated because, under Texas law, ITL has standing to pursue the relief sought against the Agral defendants.

## III.  CONCLUSION

For the reasons stated above, the motions of the Agral defendants and GEN to dismiss ITL's complaint pursuant to FED R. CIV. P. 12(b)(1) are hereby **DENIED**.

---

[15]      Once an award is assigned, the assignor is no longer a real party in interest.  See, *e.g.*, *Hallman v. Safeway Stores, Inc.*, 368 F.2d 400, 403 (5th Cir. 1966) ("It is established Texas law that . . . unless the assignor has retained some interest [in the assignment], the assignor is precluded from bringing suit."); *Southern County Mutual Insurance Company v. Ochoa*, 19 S.W.3d 452, 465 (Tex. App.--Corpus Christi 2000, no pet.) (holding that once "a cause of action is assigned or transferred, the assignee becomes the real party in interest with the authority to prosecute the suit to judgment").

**SO ORDERED**.

August 3, 2006.

A. JOE FISH
CHIEF JUDGE