UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| INTERNATIONAL TRANSACTIONS LIMITED, a Cayman Islands corporation, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. |
| VS. | ) ) | 3:01-CV-1140-G |
| EMBOTELLADORA AGRAL REGIOMONTANA S.A. de C.V., ET AL., | ) ) ) | **ECF** |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is the cross-motion of certain defendants for judgment based on the three-year time bar in 9 U.S.C. § 207. For the following reasons, the motion is denied.

### I. BACKGROUND

A complete statement of the factual and legal background of the case can be found in the October 22, 2002, memorandum order of this court, *International Transactions, Ltd. v. Embotelladora Agral Regiomontana, S.A. de C.V., et al.*, 277 F. Supp. 2d 670, 672-75 (N.D. Tex. 2002) (Fish, Chief J.) ("*ITL I*"); the October 20, 2003,

opinion of the Court of Appeals, *International Transactions, Ltd. v. Embotelladora Agral Regimontana, S.A. de C.V., et al.*, 347 F.3d 589, 591-93 (5th Cir. 2003) ("*ITL II*"); the May 26, 2004, memorandum order of this court, *International Transactions, Ltd. v. Embotelladora Agral Regiomontana, S.A. de C.V., et al.*, No. CIV.A 3:01-CV-1140-G, 2004 WL 1171217, *1-*2 (N.D. Tex. May 26, 2004) ("*ITL III*"); the May 19, 2005, opinion of the Court of Appeals, *International Transactions Limited v. Embotelladora Agral Regiomontana, SA de CV, et al.*, 2005 WL 1185564, *1-*2 (5th Cir. May 19, 2005) ("*ITL IV*"); and the August 3, 2006, memorandum order of this court, *International Transactions, Ltd. v. Embotelladora Agral Regiomontana, S.A. de C.V., et al.*, No. CIV.A 3:01-CV-1140-G, 2006 WL 2217478, *1-*6 (N.D. Tex. Aug. 3, 2006) ("*ITL V*").

ITL[1] initially brought this suit against five Mexican companies[2] (collectively, the "Agral defendants") seeking an order confirming an arbitration award.[3]  According

---

[1]     ITL is a Cayman Islands corporation.  *See* Third Amended Complaint ("Complaint") ¶ 1.

[2]     The five Mexican companies are Agral Arrendadora, S.A. de C.V., Agral Inmobiliaria, S.A. de C.V., Embotelladora Agral Regiomontana, S.A. de C.V., Embotelladora Agral de la Laguna, S.A. de C.V., and Agral Comisionista y Distribuidora, S.A. de C.V.  The Agral defendants are all Mexican corporations.  *See* Complaint ¶¶ 2-6.

[3]     On April 1, 2002, ITL added as a defendant Pepsi-Gemex, S.A. de C.V. ("Pepsi-Gemex"), a Mexican corporation which -- according to ITL -- has acquired the Agral defendants.  Complaint ¶¶ 7, 14.  Pepsi-Gemex is now known as The Pepsi Bottling Group Mexico, S. de R.L. de C.V.  ("Pepsi Bottling Mexico").  Certain
(continued...)

to the complaint, ITL entrusted ten million dollars to Sharp Capital, Inc. ("Sharp")[4]

to invest in the purchase of a promissory note (the "Note") originally issued by one of

the Agral companies, Embotelladora Agral Regimontana, S.A. de C.V.

("Embotelladora"), to NationsBank.  *Id*. ¶ 10; *see also* Response to Defendants'

Motion to Dismiss for Lack of Subject Matter Jurisdiction and Memorandum in

Support Thereof ("Response") at 3.  The remaining Agral companies guaranteed the

Note.  Complaint ¶ 10.  The Note contained the following clause.

> **Applicable Law**.  This Note is delivered in and shall be
> construed under the internal laws and judicial decisions of
> the State of Texas and laws of the United States as the
> same may be applicable.

Promissory Note ("Note") ¶ 7, *located in* Appendix to Defendants' Motion to Dismiss

for Lack of Subject Matter Jurisdiction ("Appendix to Motion") at 7-10; Complaint

¶ 10.  The Note also contained an arbitration clause requiring that any disputes

between Sharp (*i.e.*, the holder of the note) and the Agral defendants be resolved

through arbitration.  *See* Note ¶ 10; Complaint ¶ 10.

Embotelladora defaulted on the promissory note in 1996.  Complaint ¶ 11.

Shortly thereafter, Sharp -- acting pursuant to the arbitration clause in the Note --

---

[3](...continued)
Defendants' Cross-Motion for Judgment Based on the Three-Year Time Bar in 9
U.S.C. § 207 at 2 n.2.

[4]     Sharp is a Texas corporation with its principal place of business in
Texas.  Notice of Removal ¶ 8 n.22.

initiated arbitration proceedings against the Agral defendants with Judicial
Arbitration and Mediation Services ("JAMS") in Dallas, Texas.  *Id.* On January 31,
1997, JAMS entered an arbitration award of more than eleven million dollars in favor
of Sharp (the "Award").[5]  *Id.* ¶ 12; *see also* Notice of Removal ¶ 2; Response at 4.
During the arbitration proceedings, ITL was simply referred to as the "Unknown
Investor."  *See* JAMS Memorandum and Order on Motions and Requests, and
Responses Thereto, at Pre-Hearing Conference at 3-6 (issued Oct. 4, 1996) ("JAMS
Memorandum Order"), *attached to* Supplemental Appendix to Reply Brief in Support
of Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction ("Appendix
to Reply") as Exhibit 8.

On August 31, 1998, Sharp assigned the Award and the Note to Jose Treviño
Cañamar ("Cañamar"), a Mexican attorney working in Monterrey, Mexico, in
exchange for an account of Bridgestone, Inc. and payment of Sharp's legal fees.  *See*
*generally* Sharp-Cañamar Assignment, *located in* Appendix to Motion at 52-62; *see also*
Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction ("Motion") at
5; Response at 6; Appendix to Reply at 2.  On September 9, 1998, Cañamar assigned
the same arbitral award and note to Grupo Embotellador Noreste, S.A. de C.V.
("GEN")[6] in exchange for 55 million pesos.  *See* Appendix to Motion at 71, 87.

---

[5]     The underlying promissory note was merged into the Award.

[6]     On January 9, 2004, ITL added GEN, a Mexican corporation the Agral
(continued...)

Sharp, Cañamar, and GEN signed on September 9, 1998 a "Master Agreement" releasing all claims against each other and against the Agral defendants.[7]  See *id*. at 86.

On February 4, 1999, ITL brought suit against Sharp and Mauricio A. Gutierrez ("Gutierrez"), Sharp's President, seeking to regain custody of the arbitration award.  In that case, Judge Barbara M.G. Lynn of this court dismissed, on January 31, 2001, all of ITL's claims against Sharp and Gutierrez but ordered the Special Master for the Sharp Estate to convey the arbitration award to ITL.[8]  Memorandum Order and Judgment, filed January 31, 2001, in *International Transactions Limited v. Gutierrez*, No. 3:99-CV-0241-M (N.D. Tex.) (Lynn, J.).  ITL thereafter brought the present action to enforce payment of the arbitration award.

On April 12, 2002, two of the Agral defendants -- Agral Arrendadora and Agral Inmobiliaria -- filed a motion to dismiss the case for lack of subject matter jurisdiction.  *See generally* Motion.  The court originally granted the motion on

---

[6](...continued)
companies were merged into, as a defendant in this suit.  "The end result of the [a]ssignments and the merger was that the debtor under the Award and the purported owner of the Award became one."  *ITL II*, 347 F.3d at 592.

[7]     The assignment between Sharp and Cañamar and between Cañamar and GEN, as well as the execution of the Master Agreement between Sharp, Cañamar, and GEN, took place in Mexico.  Appendix to Motion at 52, 71, 86-87.

[8]     The Agral defendants contend that ITL was actually assigned nothing by the Special Master because Sharp had already assigned its rights in the award to Cañamar, who then assigned them to GEN.  Notice of Removal ¶ 6.

grounds of international comity.  See *ITL I*, 277 F. Supp. 2d at 678-81.  The Court of

Appeals, however, vacated and remanded that order, concluding that the Agral

defendants had not demonstrated that ITL and/or Sharp was afforded notice and an

opportunity to be heard in the proceedings leading to the Mexican bankruptcy court's

decision.  See *ITL II*, 347 F.3d at 591.  The Court of Appeals directed this court to

consider the Agral defendants' alternate arguments concerning defects in subject

matter jurisdiction.[9]  *Id*. at 596.

On May 26, 2004, this court dismissed ITL's complaint against the defendants

Agral Arrendadora, S.A. de C.V., Agral Inmobiliaria, S.A. de C.V., and Grupo

Embotellador Noreste, S.A. de C.V. ("GEN") for lack of subject matter jurisdiction.

See generally *ITL III*.

On May 19, 2005, the Fifth Circuit vacated that ruling.  See generally *ITL IV*.

The court noted that the defendants did not dispute that by entrusting ten million

dollars to Sharp, Sharp acted as ITL's agent when Sharp purchased the Note with

ITL's funds.  *ITL IV*, 2005 WL 1185564, at *2.  ITL then became the equitable

owner of the Note.  *Id*.  Relying on Texas Business and Commercial Code § 3.301,[10]

---

[9]     On April 2, 2004, GEN filed a motion to dismiss for lack of subject
matter jurisdiction, incorporating by reference the arguments and factual allegations
made in the related pleadings filed by the Agral defendants.  *See generally* Defendant
Grupo Embotelladora Noreste, S.A. de C.V.'s Motion to Dismiss for Lack of Subject
Matter Jurisdiction and Lack of Personal Jurisdiction.

[10]     "Person entitled to enforce" an instrument means (i) the

(continued...)

Sharp, as legal title holder to the Note, maintained the arbitration for the benefit of an "Unknown Investor," later revealed to be ITL.  Thus, the Award entered in Sharp's favor also inured to the benefit of ITL as the Note's equitable owner.  In *ITL IV*, the Fifth Circuit concluded that "[t]he Award was entered in favor of Sharp because Sharp had maintained the arbitration, not because the arbitrator had concluded that Sharp was the Award's sole owner, . . . [and that] ITL retained a beneficial interest in the Award at the time it was issued."  *Id*. at *2 n.2 and *3.  The Court of Appeals further held that "[b]ecause Sharp possessed only legal title to the Award under Texas law, the assignment from Sharp to Cañamar did not pass ITL's equitable interest unless Sharp possessed actual or apparent authority from ITL to assign the Award." *Id*. at *2.

On remand from the Court of Appeals, this court ordered the parties to file supplemental briefs on the choice of law issue.  On August 3, 2006, this court ruled that the laws of Texas apply to this case; thus, this court has subject matter jurisdiction, and ITL has standing to sue in this case as neither Sharp nor Gutierrez

---

[10](...continued)
> holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to Section 3.309 or 3.418(d).  A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

TEX. BUS. & COMM. CODE ANN. § 3.301 (Vernon 2002).

possessed actual or apparent authority from ITL to assign the Award to Cañamar.
See generally *ITL V*.

In response, the defendants[11] filed a motion for judgment based on the three-year time bar in Section 207 of Title 9, United States Code, ("§ 207").[12]  *See* Certain Defendants' Cross-Motion for Judgment Based on the Three-Year Time Bar in 9 U.S.C. § 207 ("Motion") at 5-7.  The defendants maintain that ITL's claim for confirmation of the Award is barred under § 207.  *Id.* at 5-7.  They further argue that ITL's cause of action for declaratory judgment is time-barred or not within this court's jurisdiction.  *Id.* at 7-10.

## II.  ANALYSIS

A motion brought pursuant to FED. R. CIV. P. 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts. *Hebert Abstract Company, Inc. v. Touchstone Properties, Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990) (per curiam).  If an affirmative defense is clearly established in the pleadings -- *e.g.*, when a statute of limitations defense is apparent on the face of the complaint --

---

[11]      The motion was filed by all defendants with the exception of Pepsi Bottling Mexico.  Motion at 2 n.2.

[12]      On November 13, 2006, the defendants filed a motion for leave to supplement their reply to the Motion.  In that motion, defendants attempt to file two pleadings to demonstrate that no fraud occurred and that by at least March 31, 1999, the plaintiff had actual knowledge of the action in Judge Solis's court but took no action.

then a judgment on the pleadings may be appropriate.  5C CHARLES A. WRIGHT &

ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1368 at 254 (3d ed.

2004).

As a foreign award, the Award is subject to the Inter-American Convention

under 9 U.S.C. § 202.  Motion at 5.  Section 207 provides:

> Within three years after an arbitral award falling under the
> Convention is made, any party to the arbitration may
> apply to any court having jurisdiction under this chapter
> for an order confirming the award as against any other
> party to the arbitration.  The court shall confirm the award
> unless it finds one of the grounds for refusal or deferral of
> recognition or enforcement of the award specified in the
> said Convention.

9 U.S.C. § 207.

The Award was made on January 31, 1997.  On March 29, 2001, ITL filed the

instant action to confirm the Award.  The defendants argue that because this action

was filed more than four years after the Award was made, ITL's action for judicial

confirmation is barred by § 207.  Motion at 6.[13]  The defendants also aver that they

have pleaded the statute of limitations defense since 2002, and ITL has not pleaded

the doctrine of equitable tolling.  Defendants' Reply in Support of Motion for

Judgment Based on Three-Year Bar of 9 U.S.C. § 207 ("Reply") at 2 n.3.

---

[13]  On June 26, 2006, ITL filed its third amended complaint.  On
September 5, 2006, defendants asserted the defense of limitations in their Answer
and Amended Answer.

- 9 -

ITL, on the other hand, contends that the statute is permissive because it states that "[w]ithin three years after an arbitral award falling under the Convention is made, any party to the arbitration *may* apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration." *See* Plaintiff's Opposition to Certain Defendants' Cross-Motion for Judgment Based on the Three-Year Time Bar ("Response") at 5.  ITL argues that even if § 207 mandates a three year statute of limitations, the period was equitably tolled. *Id*. at 7.  On February 18, 1997, or 18 days after the Award was entered, Sharp, acting as ITL's agent, filed a motion to confirm the Award.  *Id*.  ITL maintains that this filing tolled the statute of limitations.  *Id*.  On April 16, 1997, the court granted Sharp's motion to confirm the Award; thus, according to ITL, this is further evidence of tolling.  *Id*.  Sharp and the defendants then "fraudulently represented to the court that the matter had been 'settled' so the court never entered a final judgment."  *Id*. at 8.  According to ITL, this fraudulent act also constitutes a tolling of the statute.  *Id*. On February 4, 1999, ITL brought suit against Sharp and Mauricio A. Gutierrez, Sharp's President, seeking to regain custody of the Award.  On January 31, 2001, Judge Lynn ordered the Special Master for the Sharp Estate to convey the arbitration award to ITL, and on February 22, 2001, the Special Master made the conveyance. *Id*.  On March 29, 2001, ITL brought the present action to enforce payment of the arbitration award.  In *ITL V*, this court held the following --

> Because Sharp did not validly assigned the Award to
> Cañamar, ITL received a right or interest in the Award
> when the Special Master later assigned the Award to ITL.
> The court therefore concludes that there is a case or
> controversy before it to be adjudicated because, under
> Texas law, ITL has standing to pursue the relief sought
> against the Agral defendants.

*ITL V* at *6.

The court finds that the statute of limitations could not begin to run before ITL received a right or interest in the Award.  Because the time for filing this action was equitably tolled and thus commenced within three years after either of the arbitral awards were "made" (in the language of 9 U.S.C. § 207), the statute of limitations does not bar this action.

The parties agree that a four year statute of limitations applies to ITL's declaratory judgment action.  Response at 10; *see also* TEX. CIV. PRACT. & REM. CODE § 16.051 (Vernon 1997) ("Every action for which there is no express limitations period, except an action for the recovery of real property, must be brought not later than four years after the day the cause of action accrues.").  The doctrine of equitable tolling also  applies to ITL's cause of action for declaratory judgment; thus, the statute of limitations does not bar that action.  Accordingly, dismissal of this case is unwarranted.

III.  <u>CONCLUSION</u>

For the reasons stated above, the cross-motion of certain defendants for judgment based on the three-year time bar in § 207 is hereby **DENIED**.

**SO ORDERED**.

June 29, 2007.

_____
A. JOE FISH
CHIEF JUDGE

- 12 -